# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARK LETBETTER, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 14-CV-00125-TCK-FHM |
| | ) |
| LOCAL 514, TRANSPORT WORKERS | ) |
| UNION OF AMERICA, and | ) |
| TRASNPORT WORKERS UNION OF | ) |
| AMERICA, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Before the Court are the Motion to Transfer Venue to the Northern District of California (Doc. 14) filed by Defendant Transport Workers Union of America ("TWU") and the Motion to Remand (Doc. 23) filed by Plaintiffs.

**I.    Background**

Plaintiffs Mark Letbetter and Mike McDonald commenced this action on February 5, 2014 in the District Court of Rogers County, Oklahoma. On February 18, 2014, Letbetter and McDonald filed the First Amended Petition naming 109 additional plaintiffs (collectively, with Letbetter and McDonald, "Plaintiffs"). Plaintiffs seek to represent a putative class of "persons who were members of Local 514 in Oklahoma who elected to participate in the Early Out or Stand in Stead programs offered by American Airlines in September-October 2012." (Doc. 2-1, First Am. Pet. ¶ 124.)[1] The First Amended Petition asserts five causes of action against Defendants TWU and Local 514,

---

[1] Plaintiffs allege that "the class of affected persons numbers approximately 1,600. Upon information and belief, more than two-thirds of the class members are citizens of the State of Oklahoma." (*Id.*)

Transport Workers Union of America ("Local 514") (collectively, "Defendants"): (1) negligence, (2) unjust enrichment, (3) negligent misrepresentation, (4) declaratory judgment, and (5) injunctive relief. Underlying each of these causes of action is Plaintiffs' contention that Defendants misled Plaintiffs about Plaintiffs' eligibility to receive an equity distribution benefit from Defendants:

> Only after Plaintiffs had given up their jobs with American Airlines in Tulsa and all rights of re-employment did they learn that Defendants had misled them and, in fact, had carved out exceptions to the equity distribution benefit, thereby making Early Out an Stand in Stead program participants ineligible for the equity benefit the Defendants held for distribution to its [sic] members.

(Mot. to Remand 2.)

On March 17, 2014, TWU removed this action to this Court pursuant to 28 U.S.C. § 1441(b), contending that the Court had federal question jurisdiction under 28 U.S.C. § 1331 because federal law preempted Plaintiffs' state-law claims. TWU filed a Motion to Transfer on March 21, 2014, seeking to transfer this case to the Northern District of California, San Francisco Division, for consolidation with *Demetris, et al. v. Transport Workers Union of America*, Case No. 13-CV-05566-WHO ("*Demetris* action"). Plaintiffs subsequently filed a Motion to Remand on April 14, 2014, asserting that removal was improper because the Court lacks jurisdiction and requesting that this action be remanded to the District Court of Rogers County, Oklahoma.

## II. Primacy of Motions

Before addressing the merits of either motion, the Court must determine which motion should be decided first. Ordinarily, a federal court resolves any question about its jurisdiction before it reaches the merits of a case. *See Payton v. U.S. Dep't of Agriculture*, 337 F.3d 1163, 1167 (10th Cir. 2003) ("'Jurisdiction is a threshold question that a federal court must address before reaching the merits . . . .'") (quoting *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002)). The Court, therefore, finds it prudent to rule on the Motion to Remand before considering the Motion to

2

Transfer. *See Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342, 1346 (10th Cir. 1992) (affirming district court's decision to rule on motion to remand before considering motion to transfer). *But see Lynn v. The Purdue Pharma Co.*, No. Civ. 04-0300, 2004 WL 1242765, at *2 (D.N.M. June 7, 2004) (ruling on motion to transfer before motion to remand but noting that "[c]ourts have held that where there exists both a Motion to Remand and a Motion to Transfer, a court may decide them in any order").

### III. Motion to Remand

Plaintiffs argue that this Court lacks jurisdiction and request that this action be remanded to the District Court of Rogers County, Oklahoma.

#### A. Standard

Pursuant to 28 U.S.C. § 1447(c), "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." "This rule is inflexible and without exception, requiring a court to deny jurisdiction in all cases where it does not affirmatively appear in the record." *Geter v. St. Joseph Healthcare Sys., Inc.*, 575 F. Supp. 2d 1244, 1248 (D.N.M. 2008) (internal quotations and citations omitted). The party seeking to invoke the jurisdiction of a federal court bears the burden of establishing jurisdiction, but "since the courts of the United States are courts of limited jurisdiction, there is a presumption against its existence." *Id.* (citing *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974)).

#### B. Statutory Framework

##### 1. Federal Question Jurisdiction

Federal district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "A case arises under federal law if its well-pleaded complaint establishes either that federal law creates the cause of action or that

3

the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Nicodemus v. Union Pacific Corp.*, 440 F.3d 1227, 1232 (10th Cir. 2006) (internal quotation marks omitted).

In determining whether an action arises under federal law, the Court follows the "well-pleaded complaint" rule, which provides that a suit arises under federal law "only when the plaintiff's statement of his own cause of action shows that it is based on federal law." *Turgeau v. Admin. Review Bd.*, 446 F.3d 1052, 1060 (10th Cir. 2006) (internal quotation marks omitted). Generally, a plaintiff acts as the master of his own complaint and may prevent removal to federal court by declining to plead a federal claim even where one is available. *Id.* However, "a plaintiff may not, by the expedient of artful pleading, defeat a defendant's legitimate right to a federal forum." *BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am.*, 132 F.3d 824, 831 (1st Cir. 1997).

### 2. Duty of Fair Representation

Under federal labor law, a union has a statutory duty to fairly represent all of its members. This duty of fair representation has been judicially fashioned from the statutory obligations imposed upon a union by the Railway Labor Act.[2] *See Arnold v. Air Midwest, Inc.*, No. 93-2426-JWL, 1994 WL 247442, at *5 (D. Kan. May 24, 1994) ("A union authorized to serve as the exclusive representative of a bargaining unit under the RLA . . . owes a corresponding duty to exercise fairly the power conferred upon it on behalf of all those for whom it acts, without hostile discrimination."). The duty requires a union "to represent employees in its bargaining unit 'honestly and in good faith and without invidious discrimination or arbitrary conduct.'" *Ray v. W.S. Dickey Clay Mfg. Co.*, 584

---

[2] Despite its name, the Railway Labor Act ("RLA") applies to "every common carrier by air engaged in interstate or foreign commerce." 45 U.S.C. § 181.

F. Supp. 1225, 1227 (D. Kan. 1984) (quoting *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570 (1976)). A union breaches this duty "when its 'conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith.'" *Id.* (quoting *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)). The duty of fair representation creates a union's primary responsibility and "ordinarily state law cannot impose additional obligations upon a union in relation with its members." *Id.* Accordingly, "[w]here a plaintiff's allegations fall within the scope of the duty of fair representation, federal labor law governs and ordinarily preempts any state-law claims based on those allegations." *Thomas v. Nat'l Ass'n of Letter Carriers*, 225 F.3d 1149, 1158 (10th Cir. 2000); *see also Arnold*, 1994 WL 247442, at *6 ("Federal courts that have considered the preemption doctrine in the duty of fair representation context have consistently held that state law claims of union misconduct are preempted where the conduct at issue is subject to the union's statutory duties as exclusive representative, because that duty is governed by the federal duty of fair representation.").

**C.     Discussion**

The Court concludes that Plaintiffs' state-law claims for negligence and fraud are preempted by the duty of fair representation.[3] These claims involve alleged conduct by Defendants in their representational capacities. Plaintiffs premise their claims on the notion that "Defendants misled Plaintiffs about their eligibility to receive a distribution of equity . . . from the Defendants." (Mot. to Remand 2.) Plaintiffs' claims involve alleged conduct by Defendants in their representational

---

[3] The Court need not consider whether the duty of fair representation preempts Plaintiffs' other state-law claims Federal question jurisdiction exists even if federal law preempts only one of Plaintiffs' "state-law" claims. *See BIW Deceived*, 132 F.3d at 833 (declining to consider whether plaintiffs' other state-law claims are preempted by the duty of fair representation and noting that a federal court exercising federal question jurisdiction has supplemental jurisdiction over all state-law claims arising from the same nucleus of facts).

capacity. Such conduct is subject to and subsumed within Defendants' duty of fair representation. *Arnold*, 1994 WL 247442, at *7 (finding state-law claims preempted where claims involved union's representational activities that were "subject to and subsumed within its federal duty of fair representation). Moreover, to prevail on their claim of negligence, Plaintiffs must necessarily prove that Defendants owed a duty of care to Plaintiffs. *See Miller v. David Grace, Inc.*, 212 P.3d 1223, 1227 (Okla. 2009) ("The cornerstone of a negligence action is the existence of a duty."). Courts have repeatedly found state negligence claims to be preempted by the federal duty of fair representation. *See, e.g.*, *Arnold*, 1994 WL 247442, at *6 (listing cases); *Ray*, 584 F. Supp. at 1228 ("[T]he alleged negligence acts and omissions of the defendant . . . in establishing and maintaining the pension plan and in advising the plaintiffs about the plan, are 'inextricably intertwined and embodied in' the duty of fair representation.").

Plaintiffs argue their claims against Defendants do not require interpretation of the collective bargaining agreement and, thus, should not be preempted. However, Plaintiffs have conflated two separate theories of preemption. Although the RLA preempts state-law claims where resolution of the state-law claims requires interpretation of a collective bargaining agreement, *see Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 409 n.8 (1988), this is not a prerequisite for preemption in all cases. Instead, preemption under the duty of fair representation exists separate and apart from preemption under the RLA. *See BIW Deceived*, 132 F.3d at 829-30 (recognizing the difference between preemption under the RLA and under the duty of fair representation, which has been judicially created based on the RLA but is not explicitly provided for in the RLA). In other words, the duty of fair representation preempts state-law claims even where the interpretation of a collective bargaining agreement is *not* necessary.

6

Plaintiffs further argue that they were not union members when they were damaged by the union and, therefore, that their claims cannot be based upon the duty of fair representation. Although Plaintiffs were no longer employees at the time they were allegedly damaged by Defendants, the fraud and negligence occurred while Plaintiffs were members of the union. Regardless of when Plaintiffs suffered damage, the alleged actions complained of occurred while Defendants owed Plaintiffs a duty of fair representation. Moreover, even assuming Plaintiffs were no longer members of the union or employees of American Airlines at the time Defendants made representations to Plaintiffs regarding the equity distributions, the outcome would not change. *Id.* at 833 ("The fact that the plaintiffs were not members of the Union at the time the statements were made does not command a contrary conclusion for a union owes a duty of fair representation to nonmembers whom it has undertaken constructively to represent."). Accordingly, Plaintiffs' Motion to Remand is denied.

**IV.    Motion to Transfer**

TWU seeks to transfer this action to the Northern District of California, San Francisco Division, pursuant to the first-to-file rule for consolidation with the *Demetris* action.

**A.    First-to-File Rule**[4]

The Tenth Circuit generally follows the first-to-file rule. *See, e.g.*, *Hospah Coal Co.*, 673 F.2d at 1163 (explaining "general rule that when two courts have concurrent jurisdiction, the first

---

[4] In their response, Plaintiffs urge the Court to consider the factors under 28 U.S.C. § 1404 ("§ 1404") in considering whether to transfer this action. The first-to-file rule and § 1404 involve different considerations. *See Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1163-64 (10th Cir. 1982) (differentiating between first-to-file rule and transfer pursuant to § 1404); *Miller v. Unterreiner*, No. 13-cv-00365-REB-CBS, 2013 WL 6152362 (D. Colo. Nov. 22, 2013) (same). Because Defendants have not sought to transfer this action pursuant to § 1404, the Court has not, and need not, consider those factors.

court in which jurisdiction attaches has priority to consider the case"); *O'Hare Int'l Bank v. Lambert*, 459 F.2d 328, 331 (10th Cir. 1972) ("It is well established in this Circuit that where the jurisdiction of a federal district court has attached, that right cannot be arrested or taken away by proceedings in another federal district court."). However, the Tenth Circuit has not provided a comprehensive examination of the doctrine or its exceptions.

Relying on case law from the Fifth Circuit, this Court recently provided a thorough explanation of the first-to-file rule in *The Cherokee Nation v. Nash*, 724 F. Supp. 2d 1159, 1165-66 (N.D. Okla. 2010):

> According to the Fifth Circuit, '[u]nder the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap. The rule rests on principles of comity and sound judicial administration. The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result.'

*Nash*, 724 F. Supp. 2d at 1165-66 (citing *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999)) (internal citations omitted). "Under this well-established doctrine, a district court is permitted to decline jurisdiction where a complaint raising the same issues against the same parties has previously been filed in another district court." *Chieftain Royalty Co. v. XTO Energy, Inc.*, CIV-11-29-FHS, 2011 WL 1533073, at *1 (E.D. Okla. Apr. 22, 2011) (internal quotation marks omitted). When presented with a motion to transfer or stay based on the first-to-file rule, the role of the second-filed court is to determine "whether the moving party in the second-filed court has demonstrated a 'substantial overlap' between the two suits." *Nash*, 724 F. Supp. 2d at 1165-66. (citing *Cadle*, 174 F.3d at 605). If the second-filed court finds that the first-to-file rule generally applies, the second-filed court should transfer the case to the first-filed court for enforcement of the rule. *Id.*; *see also Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 679 F. Supp.

8

2d 1287, 1296 (D. Kan. 2010). The first-filed court can then determine how the cases should proceed.

B. **General Applicability of the First-to-File Rule**

As an initial matter, the Court must determine if TWU has shown that the first-to-file rule generally applies. To make such a determination, the Court must consider: (1) the chronology of actions; (2) the similarity of parties; and (3) the similarity of issues. *Nash*, 724 F. Supp. 2d at 1167.

1. **Chronology of Actions**

The parties do not dispute that the *Demetris* action was filed on December 2, 2013, more than two months before Plaintiffs filed this action. Accordingly, the *Demetris* action was the first action filed.

2. **Similarity of Parties**

The first-to-file rule requires that the parties be "substantially similar." *See Shannon's Rainbow, LLC v. Supernova Media, Inc.*, 683 F. Supp. 2d 1261, 1278-79 (D. Utah 2010) (finding "substantial overlap" of parties sufficient for first-to-file rule). In class action cases where the class has not yet been certified, courts are split as to whether only the named plaintiffs should be compared or whether the putative classes should be compared for purposes of the first-to-file rule. *See Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1147-48 (E.D. Cal. 2010) (discussing split among courts and compiling cases). Those courts comparing the putative classes – as opposed to the named plaintiffs – argue that the purpose behind the first-to-file rule necessitates such a comparison.

> If the first-to-file rule were to require a strict comparison only of the named plaintiffs in the two actions, the rule would almost never apply in class actions. This result would be in direct conflict to the purposes of the first-to-file rule because class actions are frequently complex affairs which tax judicial resources - the very cases

9

in which the principles of avoiding duplicative proceedings and inconsistent holdings are at their zenith.

*Sheehy v. Santa Clara Valley Transp. Auth.*, No. 5:14-cv-01325-PSG, 2014 WL 2526968, at *2 n.12 (N.D. Cal. June 4, 2014).

The Tenth Circuit has not addressed this issue; however, the U.S. District Court for the Eastern District of Oklahoma compared the putative classes in applying the first-to-file rule in a class action. *See Chieftain Royalty*, 2011 WL 1533073, at *2. The *Chieftain Royalty* court found the parties to be substantially similar where the putative class in the second-filed action was subsumed into that of the first-filed action. *Id.* ("[T]he parties are similar as XTO is the lone defendant in both actions and the putative class concerning the Oklahoma wells in this case is included in the *Roderick* putative class, i.e. this action is a complete subset of the *Roderick* action.") In determining whether the parties are substantially similar, this Court agrees with the Eastern District of Oklahoma court and finds the intent behind the first-to-file rule necessitates a comparison of the putative classes, not the individual parties.

Comparing the class Plaintiffs seek to represent in this action with the proposed class in the *Demetris* action reveals that the putative class in this action is subsumed within the putative class in *Demetris*. The plaintiffs in the *Demetris* action are: (1) Daniel Demetris, (2) William Burke, (3) Daniel Burstein, (4) Patrick Collins, (4) Richard Gorgas, (5) Paul Herfel, (5) Robert Marini, (6) Abdul Morani, (7) Paul Morrone, (8) Robert Palacek, and (9) Thomas A. Powell.[5] The plaintiffs in

---

[5] On January 30, 2014, Thomas Powell filed a putative class action complaint in the United States District Court for the Northern District of Texas, Dallas Division, captioned *Powell v. Transport Workers Union of America, AFL/CIO et al.*, Case No. 14-cv-00375-G ("*Powell* action"), seeking to represent a class of "all TWU members who enrolled in Early Separation from American between November 29, 2011, and July 26, 2013." (Doc. 15-3, *Powell* Compl.) Without any court order, the parties in the *Powell* and *Demetris* actions effectively consolidated the two actions by (1) amending the complaint in the *Demetris* action to add Thomas Powell as a named plaintiff and

10

the *Demetris* action seek to represent a putative class of "[a]ll persons who were American employees represented by TWU on November 11, 2011 but who were no longer on payroll or approved leave in a TWU-represented craft/class on July 26, 2013 or who accepted a voluntary Early Out or Stand-in-Stead." (Doc. 15-2, *Demetris Compl.* ¶ 57.) The defendant in the *Demetris* action is TWU.

In this action, 111 individual plaintiffs have brought claims against Defendants. Plaintiffs in this action seek to represent a putative class of "persons who were members of Local 514 in Oklahoma who elected to participate in the Early Out or Stand in Stead programs offered by American Airlines in September-October 2012." (First Am. Pet. ¶ 124.) TWU and Local 514 are named as defendants in this action. The Plaintiffs in this action are merely a narrower subset of the *Demetris* plaintiffs. Thus, the parties are substantially similar for purposes of the first-to-file rule. *See id.*; *see also Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1296 (N.D. Cal. 2013) ("Courts have held that proposed classes in class action lawsuits are substantially similar where both classes seek to represent at least some of the same individuals."); *Fryda v. Takeda Pharm. N. Am., Inc.*, 1:11-cv-00339, 2011 WL 1434997, at *5 (N.D. Ohio Apr. 14, 2011) ("Although not identical, the parties involved in the *Jones* case represent a larger collection of both plaintiffs and defendants broad enough to cover the parties involved in the instant action and are therefore similar for purposes of the first-to-file rule.").

### 3. Similarity of Issues

TWU contends that both suits revolve around whether Defendants breached the duty of fair representation. The plaintiffs in the *Demetris* action have alleged a duty of the breach of fair

---

incorporate his allegations and (2) dismissing the *Powell* action in the Northern District of Texas. (Doc. 15 at 7.)

11

representation and seek declaratory and injunctive relief. As discussed above, *supra* Part II.C., although Plaintiffs in this action have pled state-law causes of action, such claims essentially amount to a claim for breach of the duty of fair representation. Accordingly, the issues in this action and the *Demetris* action are substantially similar.

## V. Conclusion

For the reasons above, Plaintiffs' Motion to Remand (Doc. 23) is DENIED, and Defendants' Motion to Transfer (Doc. 14) is GRANTED. A separate order will be entered transferring this action to the United States District Court for the Northern District of California, San Francisco Division.

**IT IS SO ORDERED** this 5th day of September, 2014.

**TERENCE KERN**
**United States District Judge**